# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**JESSE WHITNEY,**

    Plaintiff,

v.                                             Case No. 2:21-cv-217-JES-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.
_____

## REPORT AND RECOMMENDATION

Plaintiff Jesse Whitney seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 18),[1] and the parties filed a joint memorandum. (Doc. 20). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.     Eligibility for Disability Benefits and the Administration's Decision**

    **A.     Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the corresponding page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Factual and procedural history

On September 28, 2018, Whitney applied for disability insurance benefits;[5] and on October 2, 2018, Whitney applied for supplemental security income. (Tr. 146-147, 178-179). He asserted a disability onset date of October 20, 2017, and he alleged disability due to neuropathy; chronic leg pain; compression fracture in spine;

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[5] Whitney met the insured status requirements through December 31, 2019. (Tr. 18).

herniated disc; bulging disc; sciatica; diabetes; chronic back pain; and dependency on a cane to ambulate. (Tr. 45-46, 120-121, 133-134, 148-149, 163-164). As of the alleged onset date, he was 46 years old with less than a high school education. (Tr. 120, 133, 148, 163, 295). He previously worked as an EMT and tow truck driver. (Tr. 53-56).

On behalf of the administration, a state agency[6] reviewed and denied Whitney's applications initially on February 6, 2019, and upon reconsideration on June 13, 2019. (Tr. 146-147, 178-179). At Whitney's request, Administrative Law Judge (ALJ) Eric Anschuetz held a hearing on June 22, 2020 (Tr. 39-80, 206), and on August 17, 2020, the ALJ issued a decision finding Whitney not disabled. (Tr. 12-32).

Whitney's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Whitney then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

---

[6] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.
>
> *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore

for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Whitney had not engaged in substantial gainful activity since the alleged onset date. (Tr. 18). At step two, the ALJ characterized Whitney's severe impairments as morbid obesity; degenerative disc disease; degenerative joint disease; diabetes mellitus; hypertension; peripheral neuropathy; and a major depressive disorder. *Id.* At step three, the ALJ determined Whitney did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 19).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to lift and carry weights of 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. He can never climb ladders or scaffolds; occasionally climb ramps and stairs; frequently balance; occasionally stoop, kneel, and crouch; but he can never crawl. The claimant must avoid workplace hazards such as unprotected heights and unshielded rotating machinery. He can frequently use his bilateral upper extremities for handling and fingering. He also must be permitted to alternate sitting and standing while remaining at his workstation for a maximum of 30-minute intervals. The claimant must use a cane to get to and from his workstation, but once at his workstation, he does not need cane anymore. He is limited to simple tasks.

(Tr. 22). Consequently, the ALJ determined that Whitney is unable to perform his past relevant work. (Tr. 30). Nevertheless, at step five, the ALJ found Whitney could perform other work that exists in significant numbers in the national economy. In support, a vocational expert opined during the hearing that three occupations represent the kinds of jobs that an individual with Whitney's age, education, work experience, and RFC could perform:

- *Table Worker* (DOT #739.687-182); sedentary; SVP 2; 40,000 jobs in the national economy;

- *Final Assembler* (DOT #713.687-018); sedentary; SVP 2; 65,000 jobs in the national economy; and

- *Bonder* (DOT #726.685-066); sedentary; SVP 2; 38,000 jobs in the national economy.

(Tr. 31).[7]

---

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided

Thus, the ALJ concluded Whitney was not under a disability from October 20, 2017, the alleged onset date, through August 17, 2020, the date of decision. (Tr. 31-32).

## II. Analysis

Whitney's appeal presents the following issues for review:

1. whether remand is required because, while this case was adjudicated by the administration, the statute governing the removal of the Commissioner violated the separation of powers;

2. whether the ALJ properly accounted for Whitney's moderate limitation in adapting and managing oneself when formulating the RFC;

3. whether the state agency suggested—and if it did, whether the ALJ was required to find—that Whitney could not perform work at SVP 2; and

4. whether the vocational expert's testimony about job numbers provided substantial evidence to support the ALJ's step five finding.

### A.     Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*,

---

into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.     There was no separation-of-powers violation warranting remand**

Whitney argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove

the Commissioner. (Doc. 20, pp. 35-39) (citing 42 U.S.C. § 902(a)(3)). And to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 20, p. 40).

But Whitney's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Saul, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. "Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Whitney has neither shown a nexus between the removal restrictions and his claim, nor has he plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused him harm. For these reasons, this court, like its sister courts throughout

the country, has repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021) (report and recommendation), *no objection and adopted*, 2022 WL 61217 (Jan. 6, 2022); *see also Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547 (M.D. Fla. Feb. 9, 2022) (report and recommendation), *overruling objections and adopted*, 2022 WL 736176 (Mar. 11, 2022); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-cv-962-SPC-NPM, 2022 WL 598036 (M.D. Fla. Feb. 10, 2022) (report and recommendation), *no objection and adopted*, 2022 WL 596833 (Feb. 25, 2022).

### C. The ALJ properly accounted for Whitney's moderate limitation in adapting and managing oneself when formulating the RFC

At steps two and three of the sequential evaluation, the ALJ assesses the functional impacts of mental-health impairments across four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996). For each domain, the ALJ rates the limitation using a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). An "extreme" limitation in a particular domain means the claimant cannot function in that area independently,

appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4); (Tr. 20). "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. *Cf.* 20 C.F.R. §§ 404.1520a(c)(4) & (d), 416.920a(c)(4) & (d); (Tr. 20). When determining whether there is enough work available in the economy that the claimant can perform, an ALJ must explicitly or implicitly account for any moderate limitations in one or more of these domains when soliciting opinion testimony from a vocational expert, or the ALJ must indicate in the decision that the evidence otherwise supports the RFC that underlies the expert's opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011).

Here, the ALJ found that Whitney had no limitation in either the first or second domains (understanding, remembering, or applying information; and interacting with others), and a mild limitation in the third domain (concentrating, persisting, or maintaining pace). (Tr. 20-21). But the ALJ found a moderate limitation in the domain of adapting or managing oneself. (Tr. 21). Because the ALJ neither explicitly nor implicitly asked the vocational expert to account for this when opining about the availability of work that Whitney could perform, the question is whether the ALJ's opinion indicates that the RFC—which the vocational expert did account for—adequately accounted for this moderate limitation.

The domain of adapting or managing oneself refers to the abilities to regulate

emotions, control behavior, and maintain well-being in a work setting. *See Pinckney v. Comm'r of Soc. Sec.*, 853 F. App'x 347, 350 (11th Cir. 2021). And generally, the ALJ reasoned that the mental status examinations, the absence of any specialized mental-health-treatment history, and Whitney's high functioning activities of daily living would not support limitations beyond those included in the RFC, which essentially limited Whitney to performing simple tasks in a safe setting. (Tr. 28-29). In particular, the ALJ reasoned that Whitney

> performs personal care, manages his medications independently, and cares for pets. He goes out and attends appointments alone, shops in stores and by computer, [and] manages his money independently…. He denied problems getting along with friends, family, and neighbors. He visits with his parents weekly, gets along well with authority figures, and has never been fired from a job for difficulty getting along with others. … He is able to handle changes in routine.

(Tr. 28).

Thus, given the ALJ's thorough recitation and consideration of the evidence and the deferential standard of review, the court should find that the ALJ's analysis adequately indicates that Whitney's ability to work, despite the moderate limitation in one of the four domains of mental functioning, is not more limited than the RFC suggests.

### D. The state agency did not suggest, and even if it did the ALJ was not required to find, that Whitney could not perform work at SVP 2

Whitney argues the ALJ erred by finding he could perform work at SVP 2 despite a statement from the state agency suggesting Whitney could only perform

work that requires a short, on-the-job training period, which Whitney equates to SVP 1. (Doc. 20, pp. 21-22). This argument has no merit. *See Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547, *10 (M.D. Fla. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 736176 (Mar. 11, 2022).

An ALJ is not bound by prior administrative decisions. In fact, the administration's regulations state that findings made by a state disability examiner at a previous level of adjudication about a vocational issue are inherently neither valuable nor persuasive. *See* 20 CF.R. §§ 404.1520b(c)(2), 416.920b(c)(2). So, the ALJ was not bound by any state-agency notice suggesting Whitney could only perform work involving a short, on-the-job training period. Rather, the ALJ had to make his own determination, which was done here.

Furthermore, there is no inconsistency between SVP 2 and a short, on-the-job training period. Using the skill level definition in 20 C.F.R. §§ 404.1568(a) and 416.968(a), unskilled work corresponds to an SVP of 1 and 2. SSR 00-4P, 2000 WL 1898704, *3 (2000). An SVP 1 job means someone can become sufficiently familiar with its necessary skills by simply watching a "short demonstration only," whereas an SVP 2 job requires "[a]nything beyond short demonstration up to and including 1 month." *Garrow v. Saul*, No. 5:19-cv-586-Oc-18JBT, 2020 WL 5802493, *4 n.6 (M.D. Fla. Aug. 19, 2020) (citing Appendix C - Components of the Definition Trailer, Dictionary of Occupational Titles, 1991 WL 688702 § II (4th ed., rev.

1991)), *report and recommendation adopted*, 2020 WL 5797867 (Sept. 29, 2020). The definition of SVP 1 omits any reference to a training period. Thus, the reference to a "training period" at the state-agency level corresponds with SVP 2.

> **E.    The vocational expert's testimony provided substantial evidence to support the ALJ's finding that Whitney could perform other work that exists in significant numbers in the national economy**

While the claimant always bears the burden of proving that he is incapable of performing any substantial gainful activity, the administration has the initial burden at step five of the sequential analysis to show that there are a significant number of jobs that can be performed by someone with the claimant's age, education, work experience, and RFC. To satisfy this burden, the administration routinely relies on the opinions of vocational experts who testify during the ALJ hearings.

A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). And because an ALJ may rely upon a vocational expert's knowledge or expertise, *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012), we are only concerned with whether the vocational expert's testimony constitutes substantial evidence and not whether substantial evidence supports the vocational expert's testimony. *See Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019).

The Social Security regulations "do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (same). Rather, a vocational expert's recognized expertise provides the necessary foundation for his or her testimony. No additional foundation is required. *See Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011). So, a vocational expert's number-of-jobs testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

The regulations do not require any degree of precision, and the available data in this area is imperfect. Moreover, the traditional rules of evidence do not apply, and opinion testimony in this kind of proceeding is not subject to litigation-like scrutiny. But a vocational expert's testimony will fail to supply substantial evidence in support of an ALJ's unfavorable step-five finding if the claimant demonstrates at the hearing that the expert's methodology contains several significant mistakes and thereby lacks a "baseline of reliability." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285 (11th Cir. 2020).

The vocational expert in this case had a master's degree in vocational rehabilitation, and he was a certified rehabilitation counselor with over thirty years of experience in the vocational services industry. (Tr. 29, 363, 383). Based on his

experience and review of the literature, the vocational expert opined during the hearing that that there were a significant number of jobs in the economy that could be performed by someone of Whitney's age, education, work experience, and RFC. (Tr. 75-78). As representative examples, he pointed to the occupations of table worker, semiconductor bonder, and final assembler and provided estimated job numbers for each that were reduced to account for the sit-stand option in the RFC. (Tr. 78). Represented by counsel at the hearing, Whitney did not object to the expert's qualifications, did not ask the expert to produce any supporting data, and did not present any evidence in rebuttal. (Tr. 77-79).[8] Rather, Whitney's counsel merely asked: "your numbers are not DOT specific, but representative of those types of jobs?" To which the expert replied: "correct." (Tr. 79).

On appeal, Whitney spins this exchange as revealing a fatal flaw—as if the expert squarely admitted to a fundamental error or gap in his methodology. But only someone viewing this exchange with a jaundiced eye and inferring error where none seems apparent could conceivably see it that way. The DOT does not quantify the number of jobs for any of its occupational descriptions, and this testimony does not suggest, let alone establish, that the expert committed any error when deriving estimated job numbers from other sources. Instead, this testimony seems to

---

[8] Whitney's attempt to offer evidence in rebuttal during this appeal comes too late and is improper. *See Biestek*, 139 S. Ct. at 1154 ("Under the substantial-evidence standard, a court looks to an existing administrative record….").

acknowledge the limits of the DOT-supplied data and confirm that the expert has simply utilized his expertise to fill the gap. Thus, the unrebutted opinion testimony supplied substantial evidence in support of the ALJ's step-five finding.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment, terminate any pending motions and deadlines, and close the case.

Respectfully recommended on August 1, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**