UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESSE WHITNEY,

    Plaintiff,

v.                               Case No:  2:21-cv-217-JES-NPM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

This matter is before the Court on consideration of Magistrate Judge Nicholas P. Mizell's Report and Recommendation (Doc. #22), filed on August 1, 2022, recommending that the Decision of the Commissioner be affirmed.  Plaintiff filed Objections to the Report and Recommendation (Doc. #23) on August 12, 2022.  The Commissioner filed a Response (Doc. #24) on August 25, 2022.

**I.   Standard of Review**

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing

Crawford, 363 F.3d at 1158-59). Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59 (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)). The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Moore, 405 F.3d at 1211 (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007) (citing Martin, 894 F.2d at 1529).

## II. The ALJ's Decision

The Administrative Law Judge (ALJ) conducted a telephonic hearing on June 22, 2020 and issued a decision on August 17, 2020. At Step One, the ALJ found that Whitney had not engaged in substantial gainful activity since October 20, 2017, the alleged onset date of disability. At Step Two, the ALJ determined that Whitney had the following severe impairments: morbid obesity, degenerative disc disease, degenerative joint disease, diabetes mellitus, hypertension, peripheral neuropathy, and a major depressive disorder that significantly limit the ability to

perform basic work activities. The ALJ found several non-severe impairments that did not exist for a continuous period of 12 months, were responsive to medication, accommodated by a residual functional capacity, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations. (Tr. 18.)

At Step Three, the ALJ determined that Whitney did not have a physical or mental impairment or combination of impairments that meet(s) or medically equals the severity of one of the limited impairments. The ALJ found no limitation in understanding, remembering, or applying information. There was no difficulty following the conversation during the hearing or during examinations. The ALJ found that Whitney performs personal care independently, manages his medication independently, prepares simple meals, cares for pets, drives, shops in stores and by computer, manages finances, and watches television. There were also no limitations in interacting with others. The ALJ found a mild limitation regarding concentrating, persisting, or maintaining pace. As for adapting or managing oneself, the ALJ found a moderate limitation. (Trs. 19-21.)

The ALJ found that Whitney had:

> the residual functional capacity to lift and carry weights of 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-

>hour workday. He can never climb ladders or scaffolds; occasionally climb ramps and stairs; frequently balance; occasionally stoop, kneel, and crouch; but he can never crawl. The claimant must avoid workplace hazards such as unprotected heights and unshielded rotating machinery. He can frequently use his bilateral upper extremities for handling and fingering. He also must be permitted to alternate sitting and standing while remaining at his workstation for a maximum of 30-minute intervals. The claimant must use a cane to get to and from his workstation, but once at his workstation, he does not need cane anymore. He is limited to simple tasks.

(Tr. 22.) At Step Four, the ALJ found that Whitney was unable to perform any past relevant work as a tow truck driver or an EMT. At Step Five, the ALJ determined, based on Whitney's age, education, work experience, and residual functional capacity, that there were jobs that existed in significant numbers in the national economy that Whitney could perform. The ALJ heard from a vocational expert regarding three sedentary jobs: table worker, final assembler, and bonder. Whitney was found to be not disabled from the onset date of October 20, 2017, through the date of the decision.

### III. Moderate Limitation

Plaintiff objects that the ALJ found moderate limitations in adapting or managing oneself because of the limited ability to handle stress but failed to explain why the problem does not affect the ability to work. The Magistrate Judge described the issue as

follows: "Because the ALJ neither explicitly nor implicitly asked the vocational expert to account for this when opining about the availability of work that Whitney could perform, the question is whether the ALJ's opinion indicates that the RFC—which the vocational expert did account for—adequately accounted for this moderate limitation." (Doc. #22, p. 11.) The Magistrate Judge concluded that the "thorough recitation and consideration of the evidence and the deferential standard of review" indicate that Whitney's ability to work is not more limited than the RFC suggests. (Id., p. 12.) Plaintiff objects that we do not know the underlying reason why the ALJ found moderate limitations and therefore it is impossible to determine whether it would affect the ability to work. (Doc. #23, p. 3.) The Commissioner responds that plaintiff "misses the entire point" of the Magistrate Judge's finding that the RFC's mental limitation accounted for moderate limitations and that substantial evidence supported the RFC. (Doc. #24, p. 3.)

The ALJ found that "claimant has experienced a moderate limitation" and "no more than a moderate limitation in the domain of functioning" at Step 3. (Tr. 21.) The ALJ clarified this finding by weighing "high functioning activities of daily living" as inconsistent with the "physical and mental allegations of disability."

> The claimant maintained he is not able to sit or stand long, or bend. He remembers being taught how to use a cane, but does not remember who prescribed it. He alleged difficult handling stress well, due to pain. Mentally, the claimant alleged that he has depression, but denied receiving any mental health treatment (testimony, Exhibit B6E).
>
> The claimant asserted he watches TV, does his laundry, and prepares simple meals daily, in the microwave. He uses his laptop to surf the web, access Facebook, and check emails. He does not use his computer for games because he does not have a streaming service. He performs personal care, manages his medications independently, and cares for pets. He goes out and attends appointments alone, shops in stores and by computer, manages his money independently, and watches TV. He denied problems getting along with friends, family, and neighbors. He visits with his parents weekly, gets along well with authority figures, and has never been fired from a job for difficulty getting along with others. He is able to pay attention for as long as he needs to, follow written and spoken instructions, and complete tasks. He is able to handle changes in routine (testimony, Exhibit B6E).
>
> The claimant asserted that he is able to drive. The fact that he drives is a significant reason to discount the impact his depression has on his ability to concentrate. One need only consider that even minimal operation of a motor vehicle requires substantial attention, concentration, understanding, remembering and carrying out complex functions, and substantial exercise of independent judgment. The claimant's own testimony reveals that he has been doing all of this on a regular basis. This activity speaks far more loudly in revealing the claimant's capabilities than any statement that he is unable to concentrate and focus.
>
> . . . .

> The medical evidence, and in particular, the clinical signs and objective evidence contained in imaging and diagnostic testing, treatment notes, physical and mental status examinations, and the claimant's high level of daily activities do not support limitations of function consistent with a complete inability to perform all work activity. Accordingly, the claimant's ability to participate in such activities undermines the persuasiveness of his allegations of disabling functional limitations.

(Trs. 28, 29.)  Because the ALJ detailed the factual regarding Whitney's self-care and functioning, the Court finds that the ALJ's findings were supported by substantial evidence.  This objection is overruled.

**IV.  SVP 2 and Training Period**

The Magistrate Judge found no inconsistency between SVP 2 and a short, on-the-job training period, as the definition of SVP 1 omits any reference to a training period.  (Doc. #22, p. 13.) Plaintiff argues that they are not consistent and the ALJ failed to provide an explanation of why he thought plaintiff was more limited than stated by the State agency doctors.  (Doc. #23, p. 4.)  The Commissioner notes that the "State agency medical and psychological consultants do not complete the form, and their prior administrative medical findings have nothing to do with this issue Plaintiff raised."  (Doc. #24, p. 6.)

A State Agency Explanation of Determination provided that plaintiff was "still capable of performing work that requires less

physical effort, and only a very short, on-the-job training period." (Tr. 94.) The ALJ stated: "The opinions of the state agency medical review physicians, who opined the claimant was capable of a range of light work activity, are persuasive (Exhibits B6A, B7A, B10A, B11A)." Notably absent was inclusion of a reference to Exhibit B3A, the source of the language. The ALJ determined that Whitney could perform physical requirements of sedentary exertional level, with limitations. (Tr. 29.)

As acknowledged by plaintiff, doc. #23, p. 4, the ALJ is not bound by the explanation. See, e.g., Garrow v. Saul, No. 5:19-CV-586-OC-18JBT, 2020 WL 5802493, at *4 (M.D. Fla. Aug. 19, 2020), report and recommendation adopted sub nom. Garrow v. Comm'r of Soc. Sec., No. 5:19-CV-586-OC-18JBT, 2020 WL 5797867 (M.D. Fla. Sept. 29, 2020). A specific vocational preparation (SVP) of 1 involves a short demonstration only, while an SVP of 2 is anything beyond short demonstration up to and including 1 month. Appendix C - Components of the Definition Trailer, Dictionary of Occupational Titles, 1991 WL 688702. The objection is overruled.

**V.   Numbers in National Economy**

The Magistrate Judge noted the vocational expert's extensive education experience in the industry and found no error in deriving estimated job numbers from sources outside the DOT. (Doc. #22, p. 16.) Plaintiff relies on this brief exchange with counsel:

> Q And in terms of your numbers, your numbers are not DOT specific, but representative of those types of jobs?
>
> A Correct.
>
> ATTY: All right. I don't have any further questions for the vocational witness, Your Honor.

(Tr. 79.)  Counsel did not object but argues that the VE provided job numbers from some larger group of jobs but not for the three DOT occupations.  (Doc. #23, p. 7.)  The Commissioner argues that plaintiff has failed to show that the VE's testimony was not substantial evidence in support of the ALJ's decision.  (Doc. #24, p. 8.)

Plaintiff agrees that the DOT does not quantify the number of jobs for any of its occupational descriptions, and therefore argues that counsel had no reason to ask whether the numbers come from the DOT.  (Doc. #22, p. 16; Doc. #23, p. 6.)  The vague way the question was asked does not support finding an error was committed as occurred in Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1282 (11th Cir. 2020).  In fact, the numbers were specifically supported as follows:

> A Table worker, 739.687-182, sedentary, SVP 2, 40,000 jobs nationally. Final assembler, 713.687-018, sedentary SVP 2, 65,000 jobs nationally. Semiconductor bonder, 726.685-066, sedentary, SVP 2, 38,000 jobs nationally. I would note, Your Honor, that a sit/stand option is not covered in the DOT, nor in the SCO. The answer comes from review of the current literature, which indicates the jobs given can be and are performed with a

> sit/stand option. 25% reduction was taken in the numbers normally given for those jobs. 35 years of experience doing job analysis placement labor market surveys, I agree with the literature.

(Tr. 78.)  The objection is overruled.

After an independent review, the Court agrees with the findings and recommendations in the Report and Recommendation.

Accordingly, it is now

**ORDERED**:

1.   The Report and Recommendation (Doc. #22) is **accepted and adopted** by the Court.

2.   Plaintiff's Objection (Doc. #23) is **OVERRULED**.

3.   The Decision of the Commissioner of Social Security is **affirmed**.

4.   The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of September 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Nicholas P. Mizell
U.S. Magistrate Judge

Counsel of Record